**[Cite as *Willoughby v. Levorchick*, 2024-Ohio-5309.]**

IN THE COURT OF APPEALS OF OHIO
SIXTH APPELLATE DISTRICT
OTTAWA COUNTY

Keegan Willoughby

      Petitioner

v.

Sheriff Stephen J. Levorchick,
Ottawa County Sheriff

      Respondent

Court of Appeals No.  OT-24-042

**DECISION AND JUDGMENT**

Decided: November 1, 2024

* * * * *

Richard M. Kerger, for petitioner.

James J. VanEerten, Ottawa Prosecuting Attorney, for respondent

* * * * *

**DUHART, J.**

**{¶ 1}** On October 10, 2024, petitioner, Keegan Willoughby, filed for a writ of habeas corpus alleging that he is presently being held in jail "on a $500,000 bail predicated on the claims that he abused his then 6-week old son[.]"  Also on October 10, 2024, respondent, Ottawa County Sheriff Stephen Levorchick, filed a return of writ and/or motion to dismiss/summary judgment motion requesting the dismissal of Willoughby's habeas petition.  On October 15, 2024, Willoughby filed a brief in

opposition to respondent's filing. For the reasons that follow, we deny the requested writ.

{¶ 2} By way of background based on the limited information before us, petitioner/defendant, Willoughby, was indicted on May 22, 2024, in the Ottawa County Court of Common Pleas, on six felony counts: three counts of felonious assault, felonies of the second degree; two counts of endangering children, felonies of the second degree; and one count of strangulation, a felony of the second degree. All of the counts are based on actions which allegedly occurred on or about May 21, 2024, involving Willoughby and his almost two-month-old baby.

{¶ 3} On May 23, 2024, Willoughby appeared in court where a bond of $500,000, no 10%, was ordered. Since that time, he has been in jail.

**Motion to Modify Bond**

{¶ 4} On September 12, 2024, Willoughby filed a motion for modification of bond order with the trial court seeking to be released on his own recognizance, with the requirement that he have no contact with the alleged child victim. Attached to the motion was the September 8, 2024 report of psychologist, Meredith Veltri, who evaluated Willoughby. Dr. Veltri opined that Willoughby does not have a serious mental illness, his presentation did not raise any concern for imminent violence toward himself or others, and his risk for violence was low.

{¶ 5} Willoughby also argued the child's injuries were "either the result of his being placed in swing set too forcefully, were congenital in nature, or the result of a

2.

vitamin deficiency." He asserted "none of these conditions demonstrate that the child was subjected to serious physical harm . . . [and] . . . the evaluations by doctors at The Toledo Hospital over the weeks following the incident indicated no serious injuries at all. The child is in the custody of his mother and thriving as he did before."

{¶ 6} Willoughby submitted that he obviously has been unemployed for at least four months and has no financial ability to satisfy a bond. Willoughby maintained that he has lived his entire life in Port Clinton, his family members are in Port Clinton, and he was not going to flee because he really had no place to go and no assets to allow him to travel.

**Opposition to Motion to Modify Bond**

{¶ 7} On October 1, 2024, the State filed its opposition to the motion to modify bond, and set forth, inter alia:

> The victim in this case . . . was approximately two months old at the time of the alleged offenses. The victim suffered subdural hematomas, and had fractures, healing fractures, bruises, and abrasions, including one abrasion that was just under the victim's scrotum.

> At the age of 23, this is not Defendant's first foray into the criminal justice system. His LEADS criminal history shows that - in 2019 – [he] was charged with Unlawful Sexual Conduct with a Minor, a felony of the fourth degree, and Importuning, a felony of the fifth degree. . . . On November 19, 2020, [he] pleaded guilty to the Importuning charge. . . . On January 8, 2021, [he] was sentenced to a three-year period of community control and was required to register as a Tier I sex offender[.]

> The primary basis of the Defendant's Motion is a woefully uninformed [one-page] letter written by . . . Dr. Veltri . . . [where] she acknowledges "I requested records from several entities . . . (although I have not received responses from all of them to date)." Dr. Veltri failed or refused to disclose those "several entities" in her letter, . . . [y]et she offered an opinion,

3.

knowing that she was not fully informed regarding the Defendant's mental-health and sexual deviancy history[.]

Dr. Veltri also made no mention of the Defendant already being a Tier I registered sex offender. . . .

. . .

[Regarding the child's injuries,] the State had already provided to the defense in discovery all of the victim's relevant medical records and Dr. Randall Schlievert's expert reports . . . [where] . . . Dr. Schlievert concluded that the child's injuries were the result of "non-accidental trauma," i.e., physical abuse.

. . .

On September 30, 2024, the victim's mother recently provided the State with a short typewritten letter, in which she claims to support the Defendant's Motion to remove the requirement for $500,000 bail[.] Therein, she opines that [he] "is not a danger to society or anyone around him * * *." Yet she ignores that the fact that the Defendant is already a convicted felon and a registered sex offender. . . . She also claims that she needs [his] financial assistance, which begs the question: if [he] is released on a personal recognizance bond, what is the likelihood that he will have contact with the child-victim, in direct violation of the most prominent special condition of the personal recognizance bond, which was set by the Court at arraignment. It is reasonable for this Court to consider that the victim's mother is colluding with the Defendant, while, at the same time, putting the infant-victim at future risk.

. . .

[S]ince the arraignment in this case, there has been no meaningful change of circumstances. Ordinarily, a trial court should not change the amount or conditions of bail unless there has been a meaningful change of circumstances. *See Leu v, Telb*, 6th Dist. Lucas No. L-07-1217, 2007-Ohio-3317, ¶ 14[.]

**Reply to Opposition**

{¶ 8} On October 3, 2024, Willoughby filed a reply to the State's opposition wherein he disputed the litany of injuries that the State claimed he caused to the child. Relying on the hospital records, Willoughby argued, inter alia, that the child "was subject

to several possible diagnoses including bleeding disorders, metabolic bone disease, and also accidental trauma, not solely non-accidental trauma like the State suggests."

{¶ 9} Willoughby asserted that the presentation of his criminal history is "completely disingenuous." He submitted he was convicted of sexual importuning with a minor, which is not rape or child molestation. He also contended that to suggest, as he believes the State has, "that the marks on the child's scrotum were evidence of some sort of child molestation is simply wrong. It is far more likely, and reasonable, to assume that these came from diaper changes and other completely normal behavior." Willoughby claimed he "has been in the community for nearly four years after his importuning conviction with absolutely no repetition of his delinquent and dangerous behavior." He offered "he's in a serious, healthy, and mature relationship and has a child with . . . a woman who loves and supports him, a woman who has stood firmly by his side despite the alleged offense. . . . [S]he has full confidence in [him] as a father and [said] that if she didn't 'I never would have the kid with him in the first place.'"

{¶ 10} Willoughby insisted the State's argument that there has been no meaningful change in circumstances "could be hardly any less true for [him]. He has spent nearly five months in jail. He has missed the first months of his child's life. He has had to sit in his cell and reflect on his actions, as the protector and father of his child." Willoughby asserted he was "not a danger to anyone, or himself, and is not at all a risk of flight and should be released on bond on his own recognizance."

5.

{¶ 11} Attached to the reply was an October 2, 2024 report by Dr. Veltri, in which she set forth, inter alia:

> Any suggestion that I did not complete a thorough assessment is inaccurate. . . . I considered the totality of information and made inferences about those data[.] . . . I am aware of his criminal history and behavioral health history . . . [and] I accounted for these data in my previous response[.]
>
> I was not tasked with a sexual recidivism risk assessment. That said, based upon my considerable experience assessing and treating sexual offenders as one of two psychologists for the high-risk residential sex offender treatment program within the Federal Bureau of Prisons, I do not have concerns about imminent risk for sexual recidivism.

**Order**

{¶ 12} On October 4, 2024, the trial court summarily denied Willoughby's motion.

**Writ of Habeas Corpus**

{¶ 13} In his writ, Willoughby argues, in addition to the arguments in his motion to modify bond and reply to the opposition, that "the evidence sufficient for denying bail must be 'clear and convincing.' No evidence was presented by the State, only argument, other than the report of a physician who is relying on reports by others." Willoughby asserts "immediately upon sensing that there might be something wrong, the young father immediately took his infant son next door to his mother who suggested they go to the hospital which they did, all within 10 minutes after the father detected a potential issue." Willoughby maintains "[t]here was no neglect of care for his son. Indeed it is likely that had he and his mother not taken the child to the hospital, there would have been no charges filed whatsoever."

6.

**Respondent's Return of Writ and/or Motion to Dismiss/Summary Judgment Motion**

{¶ 14} Respondent argues, in addition to the arguments in the opposition to the motion to modify bond, that the allegations against Willoughby include:

> [As] a result of injuries to [the child] caused by the Defendant . . . [the child] was taken to Magruder Hospital in Port Clinton, Ohio by the Defendant and the Defendant's Mother. . . and staff was informed that [the child] was not breathing.  Hospital staff was able to discover the child [was] breathing but medical records note that the child was currently suffering from intermittent seizures lasting between 1 and 3 minutes.  Hospital staff were informed that [the child] may have hit his head on a swing and that [the child's] mouth may have been covered by dad's hand to stop [the child] from crying.[]  While at Magruder, a CT scan was administered which revealed multiple subdural hemorrhages.  As a result of the severity of the injuries, medical care of [the child] was transferred to Toledo Children[']s Hospital.
>
> Upon arrival at Toledo Children[']s, [the child] was again medically evaluated.  A review of the medical records from this incident note the following:
> Bruising to lower sternum
> Bruising to left side of back
> Bruising to left thigh
> Bruising to lateral right thigh
> Bruising to right posterior shoulder
> Bruising to left shoulder extending to mid back
> Abrasion to right lower lateral chest
> Abrasion to left hip
> Abrasion to right hip
> Additional CT scan revealed two subdural hematomas
> Retinal hemorrhage in left eye
> Healing fracture to left tibia indicating a "metaphyseal corner fracture which is highly suspicious for non[-]accidental trauma" (Schlievert Report, Exhibit C)[.]
>
> As a result of the injuries, the child was admitted to the Pediatric Intensive Care Unit.  Additional notes in the file were also made relating to an injury/potential fracture to [the child's] left leg.

7.

During the course of the investigation . . . Willoughby was interviewed on two separate occasions by a Detective . . . On May 21, 2024, Willoughby informed [the] Detective . . . that [the child] was crying and he could not get him to stop. Willoughby further stated that he put [the baby] in a swing "harder that he should've" which caused [the baby] to lose consciousness and defecate. Willoughby later acknowledged that he "slammed" [the baby] in the swing rather than just harder than he should've and further acknowledged that [the baby] lost consciousness immediately upon hitting the swing. Willoughby stated that he then picked up [the baby] and he was unable to support his own head and that he appeared unresponsive. Willoughby further acknowledged placing his hand over [the baby's] mouth during his efforts to get him to stop crying. In a follow-up interview done on May 22, 2024, Willoughby attempted to walk back his admission of "slamming" [the baby] into the swing and now indicated that he "tossed" [the baby] into the seat.

{¶ 15} Respondent contends he provided justification for Willoughby's detention and made a prima facie case of showing the authority by which he holds Willoughby as a prisoner. Respondent claims that Willoughby has not met his burden of proof to establish that his bail is excessive.

**Law**

{¶ 16} Generally, a person accused of a crime is bailable, and "'[e]xcessive bail shall not be required.'" *Chari v. Vore*, 91 Ohio St.3d 323, 325, 2001-Ohio-49, quoting Article I, Section 9, Ohio Constitution. Habeas corpus is the proper vehicle for asserting a claim of excessive pretrial bail. *Chari* at 325. The burden of proof in an excessive bail habeas petition is on the petitioner. *Id.* at 326. Whether an amount of bail is excessive is a question of law subject to de novo review. *DuBose v. McGuffey*, 2022-Ohio-8, ¶ 15.

{¶ 17} In *Alliman v. Sigsworth*, 2023-Ohio-4236, ¶ 3 (6th Dist.), this court noted that in November 2022, Article I, Section 9 of the Ohio Constitution was amended, and it

8.

now specifies that "[w]hen determining the amount of bail, the court shall consider public safety, including the seriousness of the offense, and a person's criminal record, the likelihood a person will return to court, and any other factor the general assembly may prescribe." In light of this constitutional amendment, the General Assembly enacted R.C. 2937.011, which sets forth the factors and considerations for setting conditions of pretrial release. *Alliman* at ¶ 4.

{¶ 18} R.C. 2937.011 states in relevant part:

(A) . . . [T]he court shall release the defendant on the least restrictive conditions that, in the discretion of the court, will reasonably assure the defendant's appearance in court, the protection or safety of any person or the community, and that the defendant will not obstruct the criminal justice process. If the court orders financial conditions of release, those financial conditions shall be related to public safety, the defendant's risk of nonappearance in court, the seriousness of the offense, and the previous criminal record of the defendant.

(B) Any financial conditions shall be in an amount and type that are least costly to the defendant while also sufficient to reasonably assure the defendant's future appearance in court.
. . .

(E) . . . [I]n determining the types, amounts, and conditions of bail, the court shall consider all relevant information, including the following:
(1) The nature and circumstances of the crime charged[;]
(2) The weight of the evidence against the defendant;
(3) The confirmation of the defendant's identity;
(4) The defendant's family ties, employment, financial resources, character, mental condition, length of residence in the community, jurisdiction of residence, record of convictions, record of appearance at court proceedings or of flight to avoid prosecution;
(5) Whether the defendant is on probation [or the like][;]
(6) The considerations required under Ohio Constitution, Article I, Section 9.

9.

**Analysis**

{¶ 19} Considering the factors listed in R.C. 2937.011(E)(1) through (6) in relation to the facts of Willoughby's case, we make the following findings.

{¶ 20} As to (E)(1), Willoughby is charged with six felony offenses which involve the alleged assault and endangering and strangulation of his baby, requiring the baby's transfer from one hospital to another where he was hospitalized in the intensive care unit.

{¶ 21} As to (E)(2), Willoughby argues there was no neglect of care for his son because as soon as he sensed there might be a potential issue, he sought immediate help from his mother, then the hospital, and the child's injuries were not serious and were "either the result of his being placed in swing set too forcefully, were congenital in nature, or the result of a vitamin deficiency."

{¶ 22} Respondent, however, delineated the child's injuries, which consisted of bruising to six parts of the child's body, abrasions to three areas of the child's body, two subdural hematomas, retinal hemorrhage in the left eye and a healing fracture to the left tibia. An expert report was also submitted in which the doctor set forth that the leg fracture was "highly suspicious for non[-]accidental trauma" and the child's injuries were the result of "non-accidental trauma."

{¶ 23} As to (E)(3), there is no dispute regarding Willoughby's identity as the appropriate defendant.

{¶ 24} As to (E)(4), it is undisputed that Willoughby is a life-long resident of Port Clinton, he has family ties to that area, he has been unemployed for at least four months,

10.

he has limited assets, he has one prior felony conviction for importuning, he was sentenced to three years of community control and required to register as a Tier I sexual offender. A psychologist's report was offered wherein the doctor opined that Willoughby does not have a serious mental illness, his presentation did not raise any concern for imminent violence toward himself or others, and his risk for violence was low.

{¶ 25} As to (E)(5), there is no dispute that Willoughby is not on probation, community control, parole, post-release control, or bail for any other offense.

{¶ 26} As to (E)(6), this factor requires the court to "consider public safety, including the seriousness of the offense," Willoughby's "criminal record," and the likelihood he "will return to court." Willoughby is charged with serious offenses - six felonies of violence involving his infant son, resulting in the child's hospitalization. The child lives with his mother who is Willoughby's partner, and the partner supports Willoughby and believes he "is not a danger to society or anyone around him." The six felonies with which Willoughby is charged, as well as his prior felony conviction and sexual offender status, are indicative of the danger he is to the public. As to the likelihood that Willoughby will return to court, he is facing the possibility of being convicted of six felonies and being sentenced to prison, which may provide motivation for him to flee. *See Alliman* at ¶ 11, quoting *Garcia v. Wasylyshyn*, 2007-Ohio-3951, ¶ 8 (6th Dist.) ("'The nature and number of counts, as well as the possible sentences if convicted, support the implication that petitioner may indeed be a flight risk and that protection of the community is also necessary.'").

11.

{¶ 27} Based upon the foregoing, we conclude that Willoughby has not met his burden of demonstrating that the trial court's $500,000 pretrial bond, no 10%, is excessive. We therefore decline to issue the writ and find Willoughby's request for writ of habeas corpus is not well-taken and is denied. Willoughby is ordered to pay court costs associated with this action.

{¶ 28} The clerk is directed to serve upon all parties, within three days, a copy of this decision in a manner prescribed by Civ.R. 5(B).

Writ denied.

Gene A. Zmuda, J.            _____

                                                     JUDGE

Myron C. Duhart, J.

                                        _____

Charles E. Sulek, P.J.                               JUDGE

CONCUR.

                                        _____

                                                     JUDGE

This decision is subject to further editing by the Supreme Court of Ohio's Reporter of Decisions. Parties interested in viewing the final reported version are advised to visit the Ohio Supreme Court's web site at: http://www.supremecourt.ohio.gov/ROD/docs/.